UNITED STATES DISTRICT COURT   FILED
NORTHERN DISTRICT OF OHIO

2017 AUG -7  PM 2: 46

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

PAUL R. JONES,                                )
                                              )
321 Stanton Avenue                            )
Akron, Ohio 44301                             )
Tel: 234-678-0913                             )
                                              )
                        Plaintiff,            )        5:17 CV 1654
                                              )
                 v.                           )
                                              )  Civil Action No.  JUDGE ADAMS
FEDERAL BUREAU OF INVESTIGATION               )
                                              )
935 Pennsylvania Avenue, NW                   )           MAG. JUDGE BURKE
Washington, D.C. 20535                        )
                                              )
                        Defendant.            )

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Paul R. Jones brings this suit against the Federal Bureau of Investigation ("FBI"). In

support thereof, Plaintiff states as follows:

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act, 5 U.S.C. § 552, to order the

production of agency records, concerning FBI FOIA Request Number 1347982-000, involving a 2009

through 2016 FBI Investigation at the U.S. Department of Veteran's Affairs, located in Cleveland, Ohio,

regarding the plaintiff, which defendant has improperly withheld from plaintiff.

2.      Despite the great urgency in Mr. Jones's need of these documents, and in absolute

disregard for the Federal Bureau of Investigation ("FBI") Records Management Division's public policy

on processing of FOIA requests, the FBI has failed to respond to the request within the time required by

the FOIA.

1

**PARTIES**

3.      Plaintiff, Paul R. Jones, is a private citizen and former federal employee, formerly

employed by the U.S. Department of Veterans Affairs, located at 10701 East Blvd., Cleveland, Ohio and

is the requester of the records which defendant is now withholding. Plaintiff has requested this

information for use in the post-remedial due process of rights under Ohio Revised Code section 2953.01

concerning a now closed, but related matter in the State of Ohio, Cuyahoga County Court of Common

Pleas and for a book publication story that is already in progress. Prompt release of the information is

essential to meeting a deadline for book publishing draft and revising; important for due process rights

under Ohio Revised Code section 2953.01 and the Fifth and Fourteenth Amendments of the U.S.

Constitution; and the immediate public interest of this information.

4.      Defendant Federal Bureau of Justice ("FBI") is a component of the Department of Justice

("DOJ"), a department of the Executive Branch of the United States and an agency within the meaning of

5 U.S.C. § 552(f)(1). The FBI has possession and control of the records requested by the Plaintiff.

**JURISDICTION AND VENUE**

5.      This action arises under the FOIA. This Court has subject matter jurisdiction over this

action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and (a)(6)(C)(i). This

Court also has jurisdiction over this action pursuant to 28 U.S.C. 1331.

6.      Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

**FACTUAL ALLEGATIONS**

7.      In late 2016, Plaintiff applied for a position with the U.S. Department of Veteran's

Affairs as a Licensed Practical Nurse. Plaintiff filled out all applications and successfully submitted and

passed an SF-86 National Security Background Check. Subsequent background checks via the Office of

Personnel Management through their E-QIP electronic background check for general security clearance

were passed and processed.

8.      Plaintiff began his employment with the U.S. Department of Veteran's Affairs in

2

Cleveland, Ohio in February of 2007 as a Licensed Practical Nurse in Veteran's Psychiatry.

9.      From date of hire to immediately prior to his recommendation for discharge, Plaintiff had no disciplinary action in his Human Resource file.

10.     On November 05, 2009, a mass shooting terrorist attack took place at Fort Hood, U.S.A., killing thirteen U.S Service members. The act was committed by a U.S. Army Major named Nidal Hasan, whom the U.S. Government said had subsequent ties to a terrorist organization in Yemen.

11.     During and subsequent to the time of the Fort Hood shootings, the Department of Veterans Affairs in Cleveland had received increased threats, both verbal, via telephone, and in writing, from veterans to their Psychiatrists.

12.     Also during this time period, the Department of Veterans Affairs was dealing with public news reports by the Cleveland Plain Dealer of unauthorized disclose of veteran's confidential medical records by physicians and nurses regarding suspected Cleveland serial killer Anthony Sowell, a U.S. veteran. Article is at http://blog.cleveland.com/metro/2009/11/cleveland_va_employees_may_hav.html. (last visited August 04, 2017).

13.     Sometime in November of 2009, a threatening letter referencing Fort Hood shootings was placed in one of the public restrooms near one of the Department of Veterans Affairs main entrances.

14.     In December 2009, Plaintiff was one of many employees and visitors questioned by Department of Veterans Affairs Police Services Capt. Todd Mitchell and a special agent of the Cleveland Office of the Federal Bureau of Investigation (FBI) whose name is being withheld.

15.     During the months of December 2009, January 2010, February 2010, and March of 2010, and April 2010, Plaintiff's coworkers were questioned by FBI and Department of Veterans Affairs personnel about Plaintiff's work ethics and attitude, with favorable results received.

16.     Some Veterans Affairs employee(s) had computers seized at their home(s) by federal law enforcement, as reported by the American Federation of Government Employees (AFGE) Local 31 Union Office in Cleveland. Plaintiff was not one of those personnel.

3

17.     Plaintiff was harassed by Captain Todd Mitchell of the Department of Veterans Affairs Police Services through unprofessional comments. These comments were reported to Plaintiff's then supervisor, Christine Deblaey, RN, MSN. An incident report was also filed. Cleveland FBI agents asked particular employees to "wear a wire" in an attempt to obtain information on the Plaintiff. The Plaintiff has custody and control of these tape recordings and electronic email messages by staff members.

18.     By March of 2010, the harassment by investigators got to the point that AFGE Union Local 31 had to step in and asked that no staff member be subject to interrogation, intimidation, or asked to "wear wires" at work, because recording of veteran patient information would be a violation of medical records confidentiality.

19.     Plaintiff then filed a complaint in April of 2010 with U.S. Senator Sherrod Brown's Office of Constituent Services of Ohio, in writing, against the Department of Veterans Affairs, the Cleveland FBI, and specifically Veteran Affairs Police Captain Todd Mitchell, for their misconduct in staff-splitting, invasion of personal privacy, and intimidation.

20.     In July of 2010, Plaintiff was called in to Captain Mitchell's Office located in Police Services to discuss an alleged theft of a patient's ring in April of 2010. During the interview, Captain Mitchell was unprofessional, accusatory, and disrespectful. Immediately following the interview, Plaintiff notified his Assistant Unit Manager Michael B. Holt, RN, MSN, and Christine Deblaey, RN, MSN of the incident. Plaintiff was advised to fill out an incident report against Captain Mitchell. Plaintiff retains a copy of incident report.

21.     Plaintiff then notifies Senator Sherrod Brown's Office, in writing, of the updated information and accusations. A copy of the complaint is retained by Senator Brown's Offices in Ohio and by the Plaintiff.

22.     Plaintiff's employment continues throughout the next several months without disciplinary incident or action.

23.     On or about November of 2010, Plaintiff is the only male nurse working in the

4

Psychiatric ER. A patient attacked a Physician by attempting to strangle her with a phone cord and assault her. During the intervention by the Plaintiff, the Plaintiff is assaulted by the patient and both fall to the ground. The patient sustained a broken leg. The incident is reviewed by the Department of Veterans Affairs police on their recorded security camera in the room and by AFGE Local 31 Union staff. No disciplinary action is levied against the Plaintiff. Plaintiff retains copies of the incident report.

24.     In December of 2010, Plaintiff is placed on Administrative leave from the Department of Veterans Affairs. Plaintiff's termination follows in February of 2011 for "Lack of Candor".

25.     On June 13th, 2011, Plaintiff receives a notice of Indictment in the mail from the Cuyahoga County Ohio Clerk of Courts, charging Plaintiff with multiple felonies. The charges, filed by Captain Mitchell of the Veterans Affairs Police Services, are over a year after the alleged incident of April 2010 involving an alleged theft of a patient's ring.

26.     Plaintiff retained counsel. Discovery process revealed that the Cleveland FBI had conducted several alleged trash pulls at Plaintiff's residence and allege that they found a patient belongings plastic bag, with the label intact showing patient's name, social security number, date and time in Plaintiff's trash during a trash pull two weeks after the April 2010 alleged theft incident. Coincidently, this important piece information was not disclosed to the Plaintiff in his July 2010 interview with Captain Todd Mitchell of Veterans Affairs Police Services. That information must not have been important to the Department of Veterans Affairs, because if true, would be grounds for immediate dismissal from employment. Failing to dismiss an employee under those circumstances would be against Department policy and patient safety. Yet a year went by without disciplinary action or restrictive duty of any kind against the Plaintiff.

27.     Pictures of the patient bag were sent from the Cuyahoga County Prosecutor's Office to defense counsel and forwarded to Plaintiff. The patient plastic bag was heavily wrinkled, yet the patient label had no crease marks or wrinkles. The top of the bag was tied in a manner the Plaintiff never tied belonging bags before.

5

28.     After funds ran out, Plaintiff was assigned two subsequent court-appointed attorneys.

29.     Plaintiff then obtained information from one of Captain Mitchell's co-workers that Mitchell had been fired from his previous job for secretly recording police officers and attempting to break in to a desk where confidential informant information, money, and drugs were stored that resulted in an appellate court case. The appellate court affirmed the removal of Officer Mitchell from the Bainbridge Twp. Police Department. Officer Mitchell was the only one who failed a polygraph examination, and the appellate court majority stated that, "If Mitchell were to maintain his position with the Bainbridge Township Police Department, the existence of these multiple falsehoods and misrepresentations would cause serious repercussions on any future prosecutions requiring Mitchell to testify, see Giglio v. United States (1972), 405 U.S. 150, 154 (citation omitted) ("[w]hen the 'reliability of a given witness may well be determinative of guilt of innocence,' nondisclosure of evidence affecting credibility" would justify a new trial), which clearly demonstrates the severe nature and the critical disruption that these multiple falsehoods and misrepresentations present."   Document available at https://cases.justia.com/ohio/eleventh-district-court-of-appeals/2004-ohio-3687.pdf?ts=1323910238. (Last accessed August 04, 2017).

30.     At a suppression hearing, the Cleveland FBI agent's testimony and that of Captain Todd Mitchell differed, despite relying on the same Veterans Affairs police incident report. Captain Mitchell exhibited numerous inconsistencies in his testimony. The bag produced by the assistant Prosecutor was pristine in condition. It had no wrinkles, and it clearly was not the same bag that was depicted in the previous photos. In fact, the FBI agent testified under oath that, "The bag was in pristine condition, and it was found on top of the trash in the trash can." This defies logic that the Plaintiff kept the bag for two weeks, left the label on the bag, and placed it on top of other trash inside the trash can at his residence.

31.     After learning of this information, the U.S. Attorney was present at several pretrial conferences involving the Plaintiff. The Plaintiff's court-appointed counsel advised him that the U.S. Attorney and the Assistant County Prosecutor advised Counsel that if Plaintiff's continued to fight "this

case" that they would dismiss this case from state court and refile the case as a federal criminal court case. Plaintiff retains email and recorded conversation from defense counsel advising that is what Plaintiff was told.

33.     Plaintiff's court-appointed counsel was also concerned about retaliation by the FBI or having his taxes audited. Plaintiff's attorney also told him that it was disclosed that "our attorney-client emails and phone calls were recorded by the FBI and done so as an excuse that it was as part of the continued threatening letter investigation."

33.     Plaintiff's counsel met privately with the assistant prosecutor in the case. In an email shared with this Plaintiff, the prosecutor stated that "they prosecuted me differently than 99% of other defendants charged with similar crimes because they felt Plaintiff was responsible for the threatening letter, but could not prove it." Plaintiff's counsel also expressed serious concern over the patient bag phots and clear inconsistency of previous photos compared to the pristine condition of the actual bag produced.

34.     On January 17th, 2103, the misdemeanor plea was accepted out of intimidation and threats to file the case in federal court. Plaintiff's felt like it was choosing between the firing squad and the electric chair and had to make a decision between the lessor of two evils. The Plaintiff maintains to this very day that he did not take the patient's ring. Plaintiff has a contract for a Christian book to be published about the incident and retains undisclosed copies of emails and telephone recordings.

**FREEDOM OF INFORMATION ACT REQUESTS**

35.     By letter dated on or about March 30th, 2016, Plaintiff requested access to any information concerning himself specific to a 2009 through 2016 FBI investigation while employed at the U.S. Department of Veteran's Affairs as a Licensed Practical Nurse. Copies of three letters of response to plaintiff's request is attached as Exhibits 1, 2, and 3.

36.     By letter dated April 14, 2016, the FBI acknowledged receipt of the FOIA request. See Exhibit 1.

37.     By letter dated July 22, 2016, from the FBI Records Management Division, Plaintiff was

7

informed that "unusual circumstances" exist pertaining to the plaintiff's request for disclosure, but was not informed of what records were obtained, did not receive any records at all in response to the FOIA request, and was not given a time frame for disclosure of records found. The letter dated July 22, 2016, simply stated, "These unusual circumstances will delay our ability to make a determination on your request." A copy of this letter is attached as Exhibit 3.

38.     The Federal Bureau of Investigation has not provided the Plaintiff with a written notice under 5 U.S.C. § 552(a)(6)(B) extending the time for its response **and** providing a date on which a determination is expected to be dispatched to the plaintiff. The Plaintiff is therefore deemed to have exhausted his administrative remedies.

39.     Plaintiff's Exhibit 2 is a response from Mr. David Hardy, Section Chief for the Record/Information Dissemination Section stating it has located approximately 1,286 pages, negotiated to the main file of 305 pages, but it provides no affirmative answer as to whether or not the Bureau will comply with the FOIA request and release those records.

40.     As of the date of this filing, the FBI's eFOIPA system continues to reflect that "[t]he FBI's FOIPA Program is processing your request in accordance to the Freedom of Information and Privacy Acts guidelines." See Exhibit 4.

41.     Plaintiff has a right of access to the requested information under 5 U.S.C. § 552(a)(3), and there is no legal basis for defendant's withholding or denial of such access after 17 months.

## CLAIM FOR RELIEF

## COUNT I

### (Declaratory and Injunctive Relief:

### Violation of the Freedom of Information Act, 5 U.S.C. § 552)

42.     Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

43.     The FOIA provides this Court with "jurisdiction to enjoin [the FBI] from withholding

agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

44.     The documents requested by the Plaintiff are agency records within the FBI's control.

45.     The FOIA requires that within 20 working days of receiving a request an agency, like the FBI, notify a requester of the scope of the documents that the agency will produce, the scope of the documents that the agency plans to withhold under any FOIA exemptions, the right to seek assistance from a FOIA Public Liaison or the Office of Government Information Services, and the right to administratively appeal any adverse determination. 5 U.S.C. § 552(a)(6)(A)(i).

46.     The FBI received the Plaintiff's FOIA request on April 14, 2016.

47.     Pursuant to the FOIA, the FBI was required to respond to the Plaintiff's request within 20 working days and state if it intended to comply with the request.

48.     Plaintiff's Exhibit 2 is a response from Mr. David Hardy, Section Chief for the Record/Information Dissemination Section stating it has located approximately 1,286 pages, negotiated to the main file of 305 pages, but it provides no affirmative answer as to whether or not the Bureau will comply with the FOIA request and release those records.

49.     As of the date of this filing, the FBI has not provided any substantive response to the Plaintiff. It has not produced any, not even a single page, of the requested records. It has now been 17 months, which is completely unacceptable.

50.     The FBI has, thus, wrongfully withheld agency records in violation of the FOIA.

51.     The Plaintiff has exhausted its administrative remedies with respect to the FBI's failure to fully respond to his request and failure to produce the requested records. 5 U.S.C. § 552(a)(6)(C)(i).

52.     Plaintiff requests a declaratory judgment that the FBI has violated FOIA and that the Plaintiff is entitled to immediately receive the records referenced above.

53.     Plaintiff further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court issue an

injunction to the FBI to process the Plaintiff's request and produce the requested records.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.   Declare that the FBI's failure to provide responsive documents is unlawful under

FOIA;

B.   Enter an injunction that directs the FBI to immediately process the Plaintiff's March

30th, 2016, public records request;

C.   Enter an injunction that directs the FBI to make all requested records available to

the Plaintiff, unredacted, and without further delay;

D.   Provide for expeditious proceedings in this action under 28 U.S.C § 1657; and

E.   Grant such other and further relief as the Court may deem just and proper.


Respectfully submitted,

Paul R. Jones, Pro Se
321 Stanton Avenue
Akron, Ohio 44301
Telephone: 234-678-0913
Email: Ka8wwk@gmail.com

Dated: August 06, 2017